1. Where a contested issue in a divorce suit was whether or not the plaintiff was a resident of the county wherein the suit was brought, and had been for more than twelve months before filing the suit, and the court having specifically charged the jury that such was one of the issues for them to determine, and that they could not find in favor of the plaintiff unless they found that he had been a resident of the county for at least twelve months before the filing of the petition, *Page 821 
a ground of a motion for a new trial is without merit, which complains that the court, without any request therefor, failed to instruct the jury as to any rule or statement of the law of residence or domicile by which the jury could legally determine whether or not a bona fide residence had been established and maintained in the county in which the action was brought for the statutory period of twelve months before the filing of the suit, and that the failure to so instruct the jury, by some appropriate charge, or by giving in charge sections 79-401 and 79-406 of the Code, left the jury without a guide by which they might determine whether or not a legal residence had been established and maintained in the county in which the action was brought.
2. The verdict was supported by the evidence, and the judge having approved the same, his refusal of a new trial will be affirmed.
Judgment affirmed. All the Justices concur.
 No. 14863. JUNE 9, 1943.
On June 19, 1943, Claudius A. Clements Jr. instituted suit for divorce against Margaret Knapper Clements. He alleged that he was a resident of Walker County, Georgia, and had been for more than twelve months before the institution of the suit; that his wife was a resident of Belvidere, Franklin County, Tennessee; that he was a commissioned officer of the United States Army, and in the performance of his duties as such officer had been sent outside the continental limits of the United States on May 17, 1942, and had remained outside of such continental limits up to the time of the filing of the suit; that he had not seen his wife, lived with her, or cohabited with her since May 17, 1942; but that, nevertheless, his wife had born to her, on April 3, 1943, a child, which, he alleged, was conceived by his wife by reason of adulterous acts with a person or persons unknown to him; that therefore the child was illegitimate; and the conduct of his wife had caused him untold mental anguish and pain. The wife filed an answer, denying all the material allegations of the petition. The trial resulted in a verdict of divorce for the plaintiff. The defendant filed a motion for a new trial, which was overruled, and she excepted. The motion for new trial contains the general grounds and one special ground assigning error upon the failure to charge the jury some rule for application to the evidence to determine the question of legal residence.
As to the general grounds, the only question made in this court, and in the motion for new trial, is that of the plaintiff's legal residence *Page 822 
in the county in which the suit was filed for the required twelve months immediately preceding the institution of the suit. It is conceded that, if legal residence was proved, the verdict of the jury was authorized by the evidence, since other questions as to the grounds for divorce were properly for the jury, and a finding for the plaintiff was sustained by the evidence as a whole.
There is but one special ground of the motion for new trial, as follows: "Because, as movant contends, the court erred in failing to give in charge to the jury, in connection with the charge of the court upon the residence of the plaintiff in the county in which the action was brought for twelve months immediately prior to the filing of the action, as an essential to jurisdiction of the court, any rule or statement of the law of residence or domicile by which the jury could legally determine whether or not a bona fide residence had been established and maintained in the county in which the action was brought for the statutory period of twelve months prior to the filing of the suit; the failure to so instruct the jury, by some appropriate charge, or the giving of Code section 79-401 of the Code of 1933, and Code section 79-406 of the 1933 Code, left the jury with no guide by which they might determine whether or not a legal residence had been established and maintained in the county in which the action was brought. Such a charge was pertinent and applicable to the pleadings and issues of the case, and movant avers that the principle was not covered or substantially covered by the general charge. The particular matter to which the charge was adjusted was the issue of residence of the plaintiff, so as to give jurisdiction to the court, it being alleged in the petition that the plaintiff was a resident of Walker County, Georgia, and that he had been a resident of such county for more than twelve months prior to the filing of the suit, and this allegation being denied in the answer of the defendant, a material issue was thus made for determination by the jury in establishing the right of the plaintiff to the relief asked, and also in establishing the defendant's contention that the essential jurisdictional fact was not true, as alleged."
The movant appended to this ground the testimony of a witness as to the issue of the plaintiff's residence. This testimony by the father of the plaintiff was as follows: "Dr. Claudius A. Clements is my son. So far as I know his residence has not changed and is still the same as it was when he entered the service, and to my *Page 823 
knowledge it is the same. It is Walker County, Georgia, yes, sir. . . He paid poll and property taxes in 1942 in Walker County, Georgia. . He always made it a point to vote here when it was possible. . . I'm not sure when he entered the army, but I think it was February, 1941. . . He went to school in LaFayette, Georgia, and then to the University of Georgia, and then to Duke University, and the University of Georgia School of Medicine, at Augusta. I don't know in what year he completed his medical training, I think it was about 1937. He served his internship in Erlanger Hospital, Chattanooga. During the time he served his internship he stayed there at the hospital. After he completed his internship he went to Whitwell, Tennessee, for the practice of medicine, and practiced there until he went into the armed services, in February, 1941; there was a short time in there, but I think that is so. As to whether or not from the time he graduated from medical school and since he became twenty-one years of age he has never lived in Walker County, Georgia, he has lived here all his life. . . He lived here while he was serving his internship at Erlanger Hospital in Chattanooga, but he stayed there and did his work there. After he had finished his internship, he went to Whitwell, Tennessee, and opened an office, and practiced medicine. He stayed there and practiced medicine in Whitwell six or eight months and then went into the army. I don't know if he went from Whitwell to Camp Forrest, Tennessee. I don't know how long he stayed there; he stayed until he went to the Pacific Coast. As to whether or not he has not resided or had a home in LaFayette, Walker County, other than my home, since he was twenty-one years of age, his residence has always been in Walker County, Georgia. I don't think he has ever resided anywhere else since he was twenty-one years of age. . . Since he became twenty-one years of age and completed his medical training, he has been elsewhere in the practice of medicine; he has been away from home some of the time. My son's medical equipment and laboratory supplies are here at my home. I can't say off-hand how long they have been there, but he sent them home immediately after he discontinued his practice in Whitwell, Tennessee. He arranged with me to send a truck for them, and they are now at my home. He does not now have, nor has he had, an office at Whitwell, Tennessee, since he left there. During the years that my son was at Erlanger Hospital in Chattanooga, *Page 824 
he discussed with me a few times about his future, and he talked to me about establishing an office in Chattanooga, and then he discussed some other places, and the last time we discussed it, which was some time before he volunteered his services in the army, he told me that he had come to the conclusion that he would practice here in LaFayette, that he was going to put up an office here at LaFayette, Walker County, Georgia. . . It was not during the time he was interning in Chattanooga that he told me he was coming to LaFayette and open an office to practice medicine, it was just before he went into the army; I won't say that it was while he was at Whitwell, or whether it was between the time he closed out there and went away. He served his internship at Erlanger Hospital and then went to Whitwell and from there he went into the army. He told me he had come to the conclusion that he thought he would come here and open an office. During the time that my son, Dr. Clements, was practicing medicine at Whitwell, Tennessee, and interning at Erlanger Hospital in Chattanooga, Tennessee, and prior to the time he went into the armed forces, he lived and stayed physically in Whitwell, Tennessee, part of the time and practiced medicine in Whitwell."
The defendant testified in part as follows: "I am Mrs. Margaret Knapper Clements, the wife of Dr. Claudius Clements, now Captain Claudius Clements. We were married February 18, 1942, at San Miguel, California. He was in the United States Army at the time of our marriage. We lived together at San Miguel, California, until about April 1, 1942. After that I came home to LaFayette, Georgia. He was not here while I was back in LaFayette, he was at Camp Mary, Washington, and Fort Lewis, Washington."
The amended motion contained only the one ground.